UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN KARES #261586,

    Plaintiff,

v.

KENNETH McKEE, et al.,

    Defendants.

_____/

Hon. Janet T. Neff

Case No. 1:15-cv-972

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 15. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this matter **terminated**.

## BACKGROUND

Plaintiff initiated the present action against the following officials employed at the Bellamy Creek Correctional Facility (IBC): (1) Warden Kenneth McKee; (2) Assistant Resident Unit Supervisor (ARUS) Wayne Anderson; (3) Corrections Officer (CO) Justin Crandall; (4) CO Robert Darnell; (5) CO James Burch; (6) CO Andrew Kowatch; and (7) CO Philip Martin. Plaintiff alleges the following his complaint. (Dkt. #1).

As of September 3, 2013, Plaintiff was assigned to Housing Unit 5 at IBC and his cellmate was Paul Allison. On this date, Plaintiff advised Defendant Crandall that he was having problems with Allison. Defendant Crandall also was aware that prisoner Allison had been placed in the unit for disciplinary reasons. Nevertheless, Crandall took no action to separate the inmates. On

September 4, 2013, Plaintiff informed Defendant Anderson that Allison had threatened him. Anderson responded that no cell move could be made because there were no openings.

On the morning of September 5, 2013, Plaintiff informed Defendants Darnell and Burch that Allison had threatened him. Darnell told Plaintiff that he did not have time to deal with the issue at the moment, but that he would speak to Allison later if he had time. Later that day, Plaintiff explained to Defendant Kowatch that he and Allison were having serious problems and that one of them needed to be moved. Kowatch spoke with Anderson who indicated that he did not have time to speak with Plaintiff, but that if it came to more than words he would deal with it. Kowatch himself took no action to address the situation. Later that day, Allison assaulted Plaintiff, striking him repeatedly in the head and face with a combination lock.

Plaintiff asserts that Defendants all failed to protect him from assault, in violation of the Eighth Amendment. As a result of the assault, Plaintiff suffered a four to five-inch gash on the top of his head, a severe black eye, and a bruised cheek bone. Plaintiff's claims against Warden McKee were dismissed on screening. The remaining defendants now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendants have submitted evidence that during the relevant time period, Plaintiff has pursued only two grievances through all three steps of the prison grievance process: (1) Grievance IBC-13-07-2017-17z and (2) Grievance IBC-14-02-0481-28c. (PageID.63-77). Plaintiff does not dispute this assertion. Grievance IBC-13-07-2017-17z concerned allegations by Plaintiff that prison work was not being assigned fairly. (PageID.73-77). Grievance IBC-14-02-0481-28c concerned the events giving rise to this action.

On February 4, 2014, almost five months after being assaulted by his cell mate, Plaintiff submitted his Step I grievance. (PageID.70). Plaintiff's Step I grievance was rejected as untimely. (PageID.71). Prison officials specifically noted that "[y]our grievance reveals no reasonable circumstance beyond your control that prevented you from filing in a timely fashion." (PageID.71). Plaintiff's appeal to Step II was rejected on the ground that "the reason for rejection at Step I. . .has been found to be consistent with" MDOC policy. (PageID.69). Plaintiff's Step III appeal was rejected on the following ground:

> You indicated in your Step I grievance that the alleged assault occurred on 9-5-13. The Step I grievance was not received until 2-15-14, which is untimely per PD 03.02.130. You failed to indicate that you attempted to resolve the issue with appropriate staff within two business days after

>   becoming aware of a grievable issue.  Contacting the Ombudsman prior to submitting a written grievance is not considered a valid reason for a delay in submission.  Therefore, rejection of your grievance [a]s being untimely is upheld and your grievance appeal is denied.

(PageID.67).

When "a grievance is denied as untimely, it is not properly exhausted." *Martin v. Bergh*, 2008 WL4283517 at *5 (W.D. Mich., Sept. 12, 2008) (citation omitted); *Harris v. Brown*, 2011 WL 2221167 at *1 (E.D. Mich., Apr. 20, 2011) ("[w]hen a prisoner's grievance is rejected by the prison as untimely, that claim is not properly exhausted under 42 U.S.C. § 1997e").  Accordingly, Defendants argue that the aforementioned grievance cannot serve to exhaust any of the claims asserted in Plaintiff's complaint.  The Court agrees.

Plaintiff counters that he "sought administrative remedies as soon as he became aware of a grievable issue, and was able to obtain assistance in preparing the grievance."  (PageID.88). Plaintiff asserts that two factors delayed his ability to timely submit a grievance: (1) he required medical care for injuries suffered in the aforementioned assault and (2) he needed to investigate whether "there was a grievable issue surrounding staffs' conduct."  First, whether the MDOC properly rejected Plaintiff's grievance as untimely is not a matter for this Court to resolve.  *See, e.g., Drain v. Burke*, 2015 WL 1323366 at *6 (W.D. Mich., Mar. 24, 2015) (citing *Jones v. Bonevelle*, No. 11-2242, slip op. at pp. 3-4 (6th Cir., Mar. 30, 2012)).  Moreover, even if this question where properly before this Court the result would be the same.

While Plaintiff asserts that his injuries caused him to delay for five months the act of submitting a grievance, he has failed to submit evidence supporting such.  The scant evidence Plaintiff has submitted in this regard demonstrates that Plaintiff experienced, subsequent to his assault, headaches and "problems with eye sensitivity." (PageID.100-06).  The Court does not want to make light of the

injuries Plaintiff may have suffered following the subject assault, but the evidence submitted in no way suggests that Plaintiff was incapable of more timely pursuing the grievance process. As for Plaintiff's argument that he was unable to file a grievance until he completed an investigation, the evidence leads to the same conclusion. Plaintiff fails to explain why it took five months to explore this matter and determine whether to file a grievance. Plaintiff has submitted no evidence supporting this argument or otherwise explaining why an investigation into the events in question took five months to complete. In sum, Plaintiff has failed to demonstrate that there exists a genuine factual issue on the question whether prison officials properly rejected his grievance as untimely.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 15), be **granted** and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                          Respectfully submitted,

Date:  July 20, 2016                            /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge